**SO ORDERED.**

**SIGNED this 11 day of April, 2008.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KENNETH R. JORDAN, | ) | Case No. 05-18287 |
| DEBRA I. JORDAN, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |
| | ) | |

### ORDER ALLOCATING INSURANCE PROCEEDS

Before the court is debtors' Motion to Allocate Insurance Proceeds. The debtors appear by and through their attorney, David J. Lund, of Dewey and Lund, L.L.P. Southwest National Bank ("Southwest") appears by and through their attorney, Karl R. Swartz, of Morris, Laing, Evans, Brock and Kennedy, Chtd. The Chapter 13 trustee, Laurie B. Williams, appears in person. There are no other appearances. This decision constitutes the court's findings of fact and conclusions of law

1

pursuant to Fed. R. Bankr.P. 7052.

Jurisdiction

This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(K) over which the court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) and 1334.

Facts

The parties stipulate to the following: At the time of the filing of this case, Southwest held an allowed claim in the amount of $10,313.43, which was secured by Debtors' 2000 Ford Explorer ("the Vehicle"). Under the terms of Debtors' confirmed Chapter 13 Plan, Southwest was allowed a secured claim of $5,500.00 and an unsecured claim of $4,813.43. The Plan provides that Southwest's lien on the Vehicle "shall be released upon the debtors' successful completion of this plan." The unpaid principal balance of Southwest's secured claim under the Plan is $3,682.96. No distributions have been made on Southwest's unsecured claim. The Vehicle was totaled in a wreck, and Farmers Insurance Company, Inc. ("Farmers") has paid $5,843.37 in loss proceeds, which is being held in Debtors' attorney's trust account pending resolution of this matter. Southwest has released its lien on the Vehicle, and the Vehicle has been transferred to Farmers free and clear of liens. This Court has previously ruled that by releasing its lien on the Vehicle, Southwest has not released its lien on the loss proceeds.

The debtors request that Southwest be paid the balance of its secured claim in the amount of $3,682.96, and that the balance of the insurance proceeds be determined to be the debtors' property, free and clear of any lien of Southwest. Southwest maintains that it is entitled to retain its lien on the proceeds until the debtors complete their Plan and obtain a discharge. Southwest contends that in the event the debtors do not complete their Plan and obtain a discharge, its claim

will be reinstated on the contract terms, the cramdown will no longer be effective, and it will be entitled to the excess proceeds by virtue of its lien.  Southwest argues it should be paid its secured claim of $3,682.96, plus accrued interest thereon, from the insurance proceeds, with the balance held in escrow pending entry of discharge, or dismissal or conversion of the case.

Discussion[1]

Whether the holder of an allowed secured claim can be forced to release its lien upon payment of that claim in full prior to the conclusion of a chapter 13 case is an issue that has long dogged the courts.  One line of cases holds that a creditor's lien can be extinguished pursuant to the debtor's plan upon payment of the creditor's secured claim.[2]  These cases almost always arise in the confirmation setting, not "after the fact," as in the present matter.  These courts essentially reason that: (1) the undersecured portion of the creditor's lien is void upon the payment of the allowed secured claim pursuant to 11 U.S.C. § 506(d); (2) § 1322(b)(2) does not prevent such a modification to the creditor's lien rights, and (3) any concern about the debtor dismissing his case after the creditor's lien is released, but prior to full payment under the plan, is outweighed by the policy of affording the debtor a fresh start.

Another line of cases, also arising in the context of confirmation,  holds that a debtor may not obtain a release of a secured creditor's lien until he successfully completes the confirmed plan

---

[1] This is a pre-BAPCPA (Bankruptcy Abuse Prevention and Consumer Protection Act) case.  Debtors filed bankruptcy on October 13, 2005.  All statutory references are to the pre-BAPCPA version of the Bankruptcy Code, 11 U.S.C. § 101, et seq. (2005), unless otherwise noted.

[2] *See, e.g., Bank One, Chicago, NA v. Flowers*, 183 B.R. 509 (N.D.Ill.1995); *In re Nicewonger*, 192 B.R. 886 (Bankr.N.D.Ohio 1996); *In re Hernandez*, 175 B.R. 962 (N.D.Ill.1994); *In re Wilson*, 174 B.R. 215 (Bankr.S.D.Miss.1994); *In re Lee*, 156 B.R. 628 (Bankr.D.Minn.1993).

3

and receives a discharge.[3] These courts opine that liens "float through" Chapter 13 bankruptcy unaffected, unless the debtor earns the right to avoid the liens by obtaining a discharge. As the *Scheierl* court explained:

> [C]hapter 13 is a collective proceeding, in which debtors can-and must-propose and effect a comprehensive solution to their difficulties with creditors. A Chapter 13 plan is appropriately termed a "new contract" running between the debtor and all of his creditors. [citations omitted]. Like any contract, this one embodies bilateral covenants and considerations. Those pertinent to the debtor's status are simply summarized: in return for the completed performance of a promise to make payments pursuant to the plan, the debtor receives the permanent benefit of an adjustment of pre-petition obligations, discharge of debts, and various ancillary remedies... [T]his contract really has to await the debtor's full performance before the benefit of any of his statutory remedies may become final, binding, and fully effectuated on the public record.

Permitting an undersecured creditor to retain its lien pending the completion of a debtor's plan can be said to protect the creditor's interests in the event of a subsequent dismissal of the debtor's case and conform to the language of former § 1325(a)(5)(B) requiring a provision that the secured creditor retain its lien. Courts have also reasoned that because a creditor's claim is bifurcated into secured and unsecured claims by the operation of § 506(a), as to the unsecured portion of the bifurcated claim, any lien purporting to secure it is voided by the operation of § 506(d). Section 349(b) provides that in the event of the case being dismissed, the lien voided by § 506(d) is reinstated and the parties' state law property rights are restored to their status quo ante.[4]

Judge Lundin strongly criticizes this latter reasoning in his treatise. He instead notes that relying on § 349(b) in this fashion ignores the omission from that section of reference to either

---

[3] *See, e.g., In re Thompson*, 224 B.R. 360, 365 (Bankr. N.D.Tex.1998); *In re Pruitt*, 203 B.R. 134 (Bankr.N.D.Ind.1996); *In re Scheierl*, 176 B.R. 498 (Bankr.D.Minn.1995); *In re Jordan*, 164 B.R. 89 (Bankr.E.D.Mo.1994); *In re Gibbons*, 164 B.R. 207 (Bankr.D.N.H.1993).

[4] *See In re Smith*, 287 B.R. 882, 885 (Bankr. W.D. Tex. 2002).

4

collateral valuation under § 506(a) or lien retention under § 1325(a)(5)(B)(I). Instead, he cites with approval the court's opinion in *Flowers* stating that among the rights of a secured creditor that can be modified under § 1322(b) is the right to enforce its lien to the full extent of its debt.[5]

Nevertheless, Judge Lundin also makes it clear that this issue can be precluded in most cases by clearly drafted plan language that specifically refers to when a creditor's lien must be released:

> The debtor's best position is to clearly provide in the plan that liens are retained only until completion of payment of the allowed secured claim. * * * Secured creditors should insist on a specific provision for lien retention until completion of all payments under the plan and entitlement to discharge.[6]

Unlike the cases cited above, the present controversy does not arise in the context of confirmation. Here, debtors' confirmed plan expressly provides that "[t]he vehicle lien held by Southwest National Bank shall be released upon the debtor's successful completion of this plan." The Jordans have not yet successfully completed their plan and, per the contractual terms of the confirmed plan, they are not entitled to have the Bank's lien released.

In light of Jordans' clearly-drafted plan language, this Court need not choose a side in this long-running legal controversy, at least not yet. With the enactment of BAPCPA in 2005, Congress amended § 1325(a)(5) to provide that plans must provide that the holder of an allowed secured claim retains its lien until the earlier of the payment "of the underlying debt determined under non-bankruptcy law" or discharge. This suggests that the in cases commenced after October 17, 2005, issues revolving around the early release of a creditor's lien may be moot.

---

[5] 175 B.R. at 700-701.

[6] KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3d Ed. 104-20 (2007 Supp.).

5

Conclusion

For the reasons stated above, this Court concludes that in a pre-BAPCPA case, language in the debtor's confirmed plan that specifies that the creditor's lien will be retained pending completion of the plan will be enforced. In this situation, the creditor cannot be forced to release its security interest before debtors complete their plan payments. Debtors' counsel shall distribute $3,682.96, plus accrued interest thereon,[7] to Southwest. The balance shall be held in trust, at interest, either (1) in a manner agreed to by the parties or (2), failing such an agreement, by the Trustee, pending entry of discharge, or dismissal or conversion of the case. Upon completion of the Plan and entry of discharge, Southwest's lien on the excess proceeds will be released. If the case is dismissed prior to completion of the plan, the excess proceeds shall be paid to Southwest.

# # #

---

[7] The confirmed Plan provides "[e]ach allowed secured claim shall be paid at an interest rate of 5% per annum." Dkts. 8 and 21.